1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL MURRIETA, | ) | 1:08cv01330 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Michael Murrieta ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his applications for disability

insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

Security Act. The matter is currently before the Court on the parties' briefs, which were

submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate

Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 24, 2008, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his initial applications on September 20, 2002, alleging disability since August 15, 2002, due to asthma and hepatitis C.  AR 120-122, 136-144, 495-497.  After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 70-73, 79-83, 84.  ALJ James Ross held a hearing on September 27, 2005, and issued an order denying benefits on December 8, 2005.  AR 60-69, 506-529.  On April 28, 2006, however, the Appeals Council vacated the decision and remanded the action for further proceedings.  AR 96-99.

On October 18, 2006, ALJ Christopher Larsen held a hearing.  He issued an order denying benefits on January 26, 2007.  On July 8, 2008, the Appeals Council denied review.  AR 7-9.

Hearing Testimony

ALJ Larsen held a hearing on October 18, 2006, in Fresno, California.  Plaintiff attended with his attorney, Melissa Proudian.  Vocational expert ("VE") Jose Chaparro also appeared and testified.  AR 530.

Plaintiff testified that he was 49 years old at the time of the hearing.  He was 5 feet, 7 inches tall and weighed 172 pounds.  He started losing weight about three years ago, when he began Interferon treatment for his hepatitis C.  AR 535.

Plaintiff has lived in a boarding house for about three years.  AR 536-537.  He takes care of his room but does not cook or clean.  AR 537.  Plaintiff has a driver's license but does not drive.  AR 537.  He has a GED.  AR 538.

Plaintiff testified that he last worked in August 2002 as a janitor.  He stopped after about three months because he got sick.  AR 539-540.

When asked why he felt he couldn't work, Plaintiff first explained that he has hepatitis C and cirrhosis.  The hepatitis C, which was diagnosed after a liver biopsy about five years ago,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1 | causes severe joint pain.  It also causes him to be tired and confused.  AR 542-543.  He has been

2 | laying down a couple of times a day, for 30 minutes to an hour, for "quite a few years."  AR 543.

3 | Plaintiff explained that he participated in a special study at University Medical Center

4 | where he received Interferon for one year.  He also received several oral medications that caused

5 | chest pains, shortness of breath, depression and anxiety.  AR 544-545.  At the end of the

6 | program, his viral load was down, but he continued to have aching bones, tiredness and anxiety.

7 | AR 547-548.  His viral load was back up shortly after the program ended.  AR 549.

8 | Plaintiff thought the achiness in his bones had increased since he stopped treatment.  He

9 | explained that the pain is everywhere and occurs everyday.  Plaintiff testified that Advil and

10 | Ibuprofen do not take the pain away, but later stated that three Advil takes the pain away

11 | completely.  AR 550.  He takes Celebrex for the pain only sometimes because it makes his head

12 | feel "weird."  AR 551.

13 | Plaintiff also has asthma and suffers from shortness of breath and wheezing everyday.

14 | AR 551.  He thought he could walk a half mile before becoming short of breath.  AR 552.

15 | Because of pain in his lower back, Plaintiff thought he could sit for 40 minutes, at most, before

16 | needing to stand and stretch.  AR 552.  He could stand for about an hour before needing to lay

17 | down.  He could lift about five pounds.  AR 553.  He thought he could concentrate on one thing

18 | for about 30 minutes.  AR 555.

19 | Plaintiff testified that he spent a typical day watching television, talking on the phone and

20 | talking to people.  AR 553.  He sometimes visits friends.  AR 555.  He does not cook, clean, do

21 | laundry or shop for groceries.  AR 554.  Plaintiff goes to church every Sunday but cannot sit

22 | through the service.  AR 556.

23 | For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,

24 | education and work experience.  This person could lift and carry 20 pounds occasionally, 10

25 | pounds frequently, can stand and walk a total of six hours and can sit for a total of six hours.

26 | This person must avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation.

27 | The VE testified that this person could not perform Plaintiff's past relevant work as a janitor, but

28 |

1   could perform other positions in the national economy.  For example, Plaintiff could perform the

2   position of bottling line attendant, cashier II, and housekeeping cleaner.  AR 562-563.

3       For the second hypothetical, the ALJ asked the VE to assume that this person could lift

4   and carry 10 pounds occasionally, less than 10 pounds frequently.  He could stand and walk a

5   total of two hours and could sit for a total of three hours.  This person could not maintain

6   concentration, persistence and pace reliably through an eight hour day, meaning that "he can

7   maintain concentration, persistence and pace much of the time, maybe even most of the time but

8   he's not going to get through eight hours without tuning out at some point."  The VE testified

9   that this person could not perform any work.  AR 563-564.

10      Medical Record

11      In August 2002, Plaintiff saw his treating physician, David Cardona, M.D., and indicated

12   that he was having a hard time breathing for the past two weeks.  Dr. Cardona diagnosed asthma

13   exacerbation and prescribed medication.  AR 268

14      On September 13, 2002, Plaintiff was admitted to Community Medical Centers for acute

15   asthma exacerbation, most likely secondary to bronchitis.  A chest x-ray was negative.  AR 214.

16   An ultrasound of his liver showed only a single 1.5-cm single mobile stone but an otherwise

17   normal common bile duct.  AR 210, 212.  His liver function tests were mildly elevated.  He was

18   discharged in stable condition on September 16, 2002.  AR 210-211.

19      Plaintiff began treating with U.S. Dhillon, M.D., on September 21, 2002.  He set forth the

20   working diagnoses of probable hepatitis C with liver function abnormalities, reflux esophagitis,

21   and a history of bronchial asthma, anxiety, IV drug use and smoking.  Dr. Dhillon ordered further

22   testing.  AR 306-309.

23      Plaintiff returned to Dr. Cardona on October 22, 2002, and complained of pain in his left

24   shoulder.  AR 263.  Range of motion was decreased.  An x-ray showed degenerative changes

25   with suspected shoulder impingement syndrome.  AR 263-264.

26      An upper endoscopy evaluation performed by Dr. Dhillon on November 13, 2002,

27   showed remarkable gastroesophageal reflux disease, grade B, with mild erosions in the

28   esophagus and a mild to moderate hiatal hernia.  AR 298.

4

1    _____On November 14, 2002, State Agency physician Brian Ginsburg, M.D., completed a

2    Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff had to avoid

3    concentrated exposure to fumes, odors, dusts, gases and poor ventilation, but had no other

4    limitations.  AR 234-243.

5    _____In December 2002, and January and February 2003, Plaintiff saw Dr. Cardona and

6    complained of coughing and shortness of breath.  His examinations were positive for wheezing

7    and he was prescribed Advair and Albuterol.  AR 260-262.

8    Plaintiff returned to Dr. Dhillon on March 24, 2003.  His March 12, 2003, liver biopsy

9    showed a "clinical history of hepatitis C with current liver biopsy showing moderate portal

10   chronic inflammation with moderate activity (grade 3/4) with severe bridging portal fibrosis with

11   changes of cirrhosis (grade 4/4)."  AR 291-293,

12   On April 28, 2003, Plaintiff began treatment for hepatitis C with Dr. Dhillon.  He

13   received an injection of Interferon and oral medication.  AR 289.

14   On July 8, 2003, Plaintiff saw Dr. Dhillon in follow-up.  His platelet count had increased

15   and his white blood cell count was slightly depressed.  Plaintiff complained of depression and

16   anxiety, which Dr. Dhillon characterized as depression secondary to the PEG Interferon

17   treatment.  He was started on antidepressants and told to return next week for his injection.  AR

18   282.

19   On July 17, 2003, Plaintiff saw Jill Ostrem, M.D., for an internal medicine consultive

20   examination.  Plaintiff complained mainly of asthma and hepatitis C.  Examination of his lungs

21   and chest was normal.  On examination of his liver, Dr. Ostrem was able to palpate the lower

22   edge of the liver, which was slightly tender.  There was no tenderness to palpation in the midline

23   or paraspinal areas of his back.  Straight leg raising was negative, range of motion was within

24   normal limits and there were no muscle spasms.  Range of motion in his upper and lower

25   extremities was within normal limits and his gait was normal.  His neurological examination was

26   also normal.  Dr. Ostrem diagnosed chronic liver disease from hepatitis C, asthma and possible

27   anxiety disorder.  She opined that Plaintiff could lift and carry 20 pounds occasionally, 10

28

pounds frequently, and could stand and walk for six hours.  She believed that Plaintiff could sit without restriction.  AR 269-273.

Plaintiff returned to Dr. Dhillon on July 25, 2003.  His platelet count was getting low and Dr. Dhillon decided to stop treatment for a couple of weeks.  AR 394.

In a Psychiatric Review Technique dated August 1, 2003, State Agency physician Carmen E. Lopez, M.D., found no medically determinable impairment.  AR 275.

Also on August 1, 2003, Dr. Lopez completed a Physical Residual Functional Capacity Assessment form.  She opined that Plaintiff had to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, but had no other limitations AR 337-344.  This opinion was affirmed on March 1, 2004.  AR 344.

A CT of Plaintiff's abdomen and pelvis revealed a fatty liver, with no focal liver lesion seen, cholelithiasis and mild asymmetry of the seminal vesicles, right larger than left.  AR 317-318.

A treatment note dated November 20, 2003, indicates that Plaintiff was on therapy for his hepatitis C, but lost his insurance.  His asthma was stable on Advair and Albuterol.  AR 310.

Plaintiff underwent pulmonary function tests on January 21, 2004.  The tests were normal and showed that his asthma appeared to be in good control.  AR 384.

A February 6, 2004, abdominal ultrasound revealed cholelithiasis with normal bile ducts.  AR 379.

On March 16, 2004, State Agency physician Glenn Ikawa, M.D., completed a Psychiatric Review Technique and opined that Plaintiff's anxiety-related disorders were not severe.  AR 336.

An abdominal ultrasound performed on March 20, 2004, revealed cholelithiasis.  AR 373.

Plaintiff started Interferon therapy again on May 7, 2004.  AR 362.

A treatment note from July 12, 2004, sets forth Plaintiff's symptoms of fatigue and general malaise.  AR 359.

Treatment notes from October 11, 2004, indicate that Plaintiff was not responding to treatment for his hepatitis C.  AR 356.

On May 4, 2005, Plaintiff attended his screening visit for his next study treatment at Community Medical Center.  AR 492.  He began treatment on June 3, 2005.  AR 490.

On June 25, 2005, Plaintiff reported that he was fatigued and could not function throughout the day.  He also complained of feeling agitated.  He was instructed to continue the medications.  AR 487.

Plaintiff complained of arthralgia and anxiety on June 30, 2005.  AR 486.

On July 8, 2005, Keleni M. Tukia, M.D., the research coordinator from UCSF, Fresno Medical Education Program, wrote a one page letter explaining that Plaintiff began treatment with the Center for Clinical Research at UMC on June 3, 2005.  Dr. Tukia further explained that Plaintiff's medications "has [sic] many side effects, some of which include severe debilitating fatigue, headaches, nausea, vomiting, joint pains, loss of appetite, insomnia, anemia, neuropenia, anxiety and depression."  Plaintiff had been experiencing consistent episodes of fatigue which "leave him unable to participate in many physical activities."  Medications for his other medical conditions "may further prevent him from participating in some activities requiring long standing and physical labor."  His range of concentration is also limited, and "therefore [Plaintiff] feels that he cannot adequately function in a normal capacity while he is on treatment."  His treatment would continue for 42 more weeks.  AR 401.

On July 8, 2005, Plaintiff reported that he had arthralgia but was trying to remain active and had been working outdoors.  AR 485.

On July 27, 2005, Plaintiff complained of mild fatigue, arthralgia and headaches.

In September 2005, Plaintiff complained of mild headaches, mild fatigue, irritability and mild arthralgia.  AR 479-480.

Plaintiff was instructed to decrease his medications on October 17, 2005, after he complained of a panic attack and chest pain.  He also complained of moderate anxiety and was started on Lexapro.  AR 478.

On October 20, 2005, Plaintiff complained of ongoing mild fatigue.  AR 477.

Plaintiff returned for follow-up on November 18, 2005.  He complained of arthralgia, fatigue, bronchitis, insomnia and headaches.  His irritability had also increased.  Plaintiff was instructed to increase his medications.  AR 471.

On February 13, 2006, the 36th week of treatment, Plaintiff complained of constant mild fatigue where there was no change in daily activities, arthralgia, insomnia and mild headaches.  He also complained of a memory impairment.  He was instructed to continue the current study medications.  AR 461.

Plaintiff sought emergency room treatment on February 27, 2006, for widespread aches and pain, forgetfulness, paranoid thinking and increased bruising.  Treatment notes report that this may be rheumatological manifestations.  Plaintiff was sent home with instructions to follow-up with labs and another appointment.  AR 446-449.

On March 20, 2006, Plaintiff's study medications were stopped temporarily because he complained of chest pains and moderate arthralgia.  AR 441.

On March 27, 2006, he complained of an ongoing unsteady gait, but he had no noticeable limp.  His medications were restarted.  AR 440.

On April 13, 2006, Plaintiff complained of diffuse aches and pains and forgetfulness.  AR 438.  A pulmonary function test performed subsequently was normal.  AR 438.

Plaintiff's treatment ended on May 5, 2006.  AR 437.

Plaintiff returned in follow-up on June 2, 2006.  He complained of ongoing fatigue, headaches and arthralgia.  Plaintiff was diagnosed with GERD, arthritis and asthma.  AR 436.

On July 27, 2006, Plaintiff saw Dr. Sadda for his asthma and complaints of pain in his joints, hands and legs.  He also complained of needle-like pain over his liver.  Dr. Sadda referred Plaintiff to the hepatitis clinic and allowed three months of disability.  AR 433-434.

On July 29, 2006, Plaintiff went to the emergency room complaining of chest tightness.  He was diagnosed with anxiety exacerbation and released.  AR 408-412.

On October 19, 2006, Usman Javed, M.D., completed a form for the Department of Child Support Services indicating that Plaintiff's chronic joint pain prevented repetitive, fine movements.  He also opined that Plaintiff was prevented from working, or was substantially

8

1   reduced in his ability to work, and it was uncertain when he could return.  Dr. Javed diagnosed

2   hepatitis C and cirrhosis and noted that he last saw Plaintiff on October 19, 2006.  Plaintiff was

3   scheduled to return to Dr. Javed in three months.  AR 494.

4        ALJ's Findings

5        The ALJ determined that Plaintiff had the severe impairments of asthma, cirrhosis and

6   hepatitis C.  AR 17.  Despite these impairments, he found that Plaintiff retained the residual

7   functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, and

8   to stand, walk and sit for six hours each in an eight-hour period.  Plaintiff had to avoid

9   concentrated exposure to irritants.  AR 18.  Based on the testimony of the VE, the ALJ

10  determined that although Plaintiff could not perform his past relevant work, he could perform a

11  significant number of jobs in the national economy.  AR 23.  Examples of occupations included

12  bottling line attendant, cashier II and housekeeping cleaner.  AR 23.

13                              **SCOPE OF REVIEW**

14       Congress has provided a limited scope of judicial review of the Commissioner's decision

15  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

16  the Court must determine whether the decision of the Commissioner is supported by substantial

17  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

18  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

19  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

20  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

21  401.  The record as a whole must be considered, weighing both the evidence that supports and

22  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

23  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

24  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

25  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

26  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

27  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

28  Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (asthma, cirrhosis and hepatitis C) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of jobs. AR 17-23.

Here, Plaintiff argues that the ALJ erred in ignoring Dr. Javed's opinions.

**DISCUSSION**

Plaintiff's sole argument revolves around Dr. Javed's October 19, 2006, form in which he opined that Plaintiff was unable to work, or was substantially reduced in his ability to work.  He further opined that Plaintiff's chronic joint pain prevented repetitive, fine movements.  Dr. Javed diagnosed hepatitis C and cirrhosis and noted that he last saw Plaintiff on October 19, 2006.  AR 494.  Plaintiff argues that the ALJ erred by failing to address this opinion.

1    Here, the ALJ gave substantial weight to the opinion of Dr. Ostrem, who examined

2    Plaintiff in July 2003 and found him capable of light work.  AR 21.  He gave less weight to the

3    State Agency physicians who found Plaintiff capable of work at the heavy level of exertion.  AR

4    21.  As to Dr. Tukia's August 2005, letter, the ALJ explained that it was not entitled to any

5    significant weight.  AR 21.

6         Plaintiff correctly argues that the ALJ did not address Dr. Javed's letter in any way.

7    Plaintiff argues, and the Court agrees, that this violates SSR 96-8p, which states that the RFC

8    "must always consider and address medical source statements," and directs that if the RFC

9    assessment conflicts with an opinion from a medical source, "the adjudicator must explain why

10   the opinion was not adopted."

11        While to the extent to which Dr. Javed treated Plaintiff is not clear, it appears that he was

12   a treating physician.  At the beginning of the hearing, Plaintiff's counsel asked to keep the record

13   open because Plaintiff would be seeing "his doctor" the following day, October 19, 2006, and

14   that he would be completing a child support form.  Plaintiff also testified that he stopped seeing

15   Dr. Tukia in July 2006, though he could not remember his new treating physician's name.  AR

16   549.  Dr. Javed's form also evidences a treating physician relationship of some kind in stating

17   that Plaintiff would return in three months.  AR 494.

18        In any event, Dr. Javed was a "medical source" and the ALJ erred by ignoring the

19   opinion.  The ALJ did not reference Dr. Javed's opinion during his review of the medical

20   evidence, nor did he explain why he rejected Dr. Javed's opinion that Plaintiff's chronic joint

21   pain prohibited repetitive fine movements.  AR 494.  In *Lingenfelter v. Astrue*, the Ninth Circuit

22   found error where the ALJ ignored the opinions of two treating physicians, who corroborated the

23   claimant's alleged pain and limitations,"without explanation." *Lingenfelter v. Astrue*, 504 F.3d

24   1028, 1037 (9th Cir. 2007).  Here, Dr. Javed's limitations are based at least in part on Plaintiff's

25   chronic joint pain, a complaint that Plaintiff makes repeatedly throughout the medical records

26   and during the hearing.

27        *Lingenfelter* also cites the importance of the Ninth Circuit's decision in *Orn v. Astrue*,

28   which also directs this Court's findings.  In *Orn,* the Ninth Circuit reiterated and expounded upon

11

1   its position regarding the ALJ's acceptance of the opinion an examining physician over that of a

2   treating physician.  The Court held that a treating physician's opinion must be given controlling

3   weight if it is well-supported and not inconsistent with the other substantial evidence in the

4   record.  *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir.2007).  Demonstrating the importance of a

5   treating physician's opinion, the Court further explained that even if the opinion is not entitled to

6   "controlling weight," it is "still entitled to deference and must be weighed using all the factors

7   provided in 20 C.F.R. § 404.1527."  *Id.* at 632-633.

8          The Court recognizes that Dr. Javed's opinion was short and not thoroughly supported,

9   but given the deference entitled to a treating physician in the Ninth Circuit and the mandates of

10  SSR 96-8p, the Court must conclude that the ALJ erred by wholly ignoring the opinion.  At the

11  very least, the ALJ should have discussed Dr. Javed's opinion and set forth specific and

12  legitimate reasons for rejecting it.  *See Lingenfelter*, 504 F.3d at 1038, n. 10 (explaining that the

13  ALJ cannot avoid the treating physician requirements "simply by not mentioning the treating

14  physician's opinion and making findings contrary to it.").  Better yet, perhaps the ALJ should

15  have inquired further into Dr. Javed's treatment history by requesting additional records.

16         In opposing Plaintiff's argument, Defendant uses various findings in arguing that the

17  "ALJ's decision clearly shows that Dr. Javed's opinion could not be given any weight."

18  Opposition, at 4.  For example, Defendant cites the ALJ's discrediting of Plaintiff's subjective

19  complaints of joint and bone pain and reasons that Dr. Javed's opinion could not have been given

20  weight because it relies on Plaintiff's chronic joint pain.  However, neither Defendant nor this

21  Court can speculate as to what the ALJ may have done had he analyzed Dr. Javed's opinion.

22  While the Court can draw inferences properly supported by the record, the Ninth Circuit's

23  approach to treating physician's opinions prevents the Court from doing so under the facts of this

24  case.  The Court may not accept post hoc explanations, *Barbato v. Commissioner of Social Sec.

25  Admin.*, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996), and it may not speculate as to the ALJ's

26  findings or the basis of the ALJ's unexplained conclusions, *Lewin v. Schweiker*, 654 F.2d 631,

27  634-35 (9th Cir. 1981).

28

1    Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

2  power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

3  or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

4  In social security cases, the decision to remand to the Commissioner for further proceedings or

5  simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

6  599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

7  administrative proceedings, a social security case should be remanded.  Where, however, a

8  rehearing would simply delay receipt of benefits, reversal and an award of benefits is

9  appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

10  F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

11  useful purpose would be served by further administrative proceedings, or where the record has

12  been thoroughly developed.").

13    The Court finds that additional proceedings can remedy the ALJ's error and therefore

14  REMANDS the action for further proceedings.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.

15  1996).  On remand, the ALJ must explain his treatment of Dr. Javed's opinion and should

16  consider gathering additional information.

17                                                      **<u>CONCLUSION</u>**

18    Based on the foregoing, the Court finds that the ALJ's decision is not supported by

19  substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

20  further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

21  judgment in favor of Plaintiff Michael Murrieta and against Defendant Michael J. Astrue,

22  Commissioner of Social Security.

23    IT IS SO ORDERED.

24  **Dated:    July 20, 2009              /s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                                      13